

Glenn R. Kantor, State Bar No. 122643
e-mail: gkantor@kantorlaw.nett
Elizabeth K. Green, State Bar No. 199634
e-mail: egreen@kantorlaw.net
KANTOR & KANTOR, LLP
19839 Nordhoff Street
Northridge, CA 91324
(818) 886-2525 (Tel)
(818) 350-6272 (Fax)

Attorneys for Plaintiff
FRANCES L. MICHAEL

**E-filing**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

FRANCES L. MICHAEL, on behalf of
herself and others similarly situated,

        Plaintiffs,

    vs.

CONTINENTAL CASUALTY
COMPANY,

        Defendant.

CASE NO:

**CLASS ACTION**

COMPLAINT FOR DAMAGES

(1) BREACH OF CONTRACT

(2) BREACH OF THE COVENANT OF
GOOD FAITH AND FAIR DEALING

      Plaintiff Frances L. Michael hereby complains of Defendant Continental

Casualty Company, on her own individual behalf, and on behalf of those similarly

situated, as follows:

### COMMON ALLEGATIONS

    1.    Jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. §

1332. The amount in controversy, exclusive of interest and costs, exceeds the sum of

$100,000.00.

    2.    Venue is proper in this Court based upon 28 U.S.C. § 1391(a).

1

3.     Plaintiff is informed and believes that Defendant Continental Casualty Company ("CCC") is a corporation incorporated in and with its principal place of business in the State of Illinois, authorized to transact and transacting business in the Northern District of California and can be found in the Northern District of California.

4.     Plaintiff Frances Michael ("Plaintiff") is a resident of Millbrae in the County of San Mateo, State of California.

**FIRST CLAIM FOR RELIEF BY PLAINTIFF**
**AGAINST DEFENDANT FOR BREACH OF CONTRACT**

5.     On or about May 17, 1991, Defendant CCC issued to Plaintiff a Policy of Long Term Care Insurance, Policy Number 076381081 (the "Policy") (Attached hereto as Exhibit "A").

6.     The Policy provides long term care benefits for care received in a long term care facility, such as a nursing home. An Extended Home Health Care Rider to the Policy provides additional benefits for home health care described as "Secondary Services" (defined as care provided by a medical social worker, for occupational therapy, home health aide, or for homemaker services) if such care is received in the same week as a Primary Service. "Primary Service" is defined by the Rider as nursing care services provided by a registered nurse, licensed practical or vocational nurse, or for physical therapy or speech therapy. (*See* Exhibit "A").

7.     An Alternate Plan of Care ("APC") rider to the Policy provides additional coverage. In pertinent part, the APC states: "If You would otherwise require confinement in a Long Term Care Facility, we may pay for the cost of services under a written alternate plan of care, if appropriate alternate care is a medically acceptable option. The alternate plan of care may be initiated by You or Us. It will be developed by health care professionals and consistent with generally

2

1  accepted medical practice.  Those parts which are mutually agreeable to You, Your

2  physician and Us will be adopted."  (See Exhibit "A").

3       8.     All premiums due on Plaintiff's Policy have been paid.  At all relevant

4  times, Plaintiff has performed all obligations under the Policy on her part to be

5  performed.

6       9.     In December 2006 at age 84, Plaintiff was admitted to the hospital for a

7  broken pelvis.

8       10.    Upon discharge from the hospital, Plaintiff returned to her home and

9  received daily home health care from a home health aide due to her inability to care

10  for herself.

11      11.    In or about February 2007, pursuant to the terms of her Policy, Plaintiff

12  submitted a claim to CCC for long term care benefits under the Policy.

13      12.    CCC notified Plaintiff that she was not eligible for benefits under the

14  terms of the Policy as she did not also receive a "Primary Service" pursuant to the

15  Extended Home Health Care Rider.  CCC did not consider whether Plaintiff was

16  entitled to benefits under the APC rider to the Policy.

17      13.    Plaintiff contends that she is eligible for and entitled to benefits pursuant

18  to the APC rider to the Policy.

19      14.    As a direct and proximate result of CCC's improper determination

20  regarding Plaintiff's long term care claim, Plaintiff has been deprived of benefits.

21      15.    The improper determination of Plaintiff's claim constitutes a breach of

22  the insurance contract between CCC and Plaintiff.  As a direct and proximate result of

23  CCC's breach of the subject insurance Policy, Plaintiff has suffered and will continue

24  to suffer contractual damages under the terms and conditions of the Policy, plus

25  interest and other incidental damages and out-of-pocket expenses, all in the sum to be

26  determined according to proof at the time of trial.

27  / / /

28  / / /

3

## SECOND CLAIM FOR RELIEF BY PLAINTIFF
## AGAINST DEFENDANT FOR BREACH OF THE IMPLIED
## COVENANT OF GOOD FAITH AND FAIR DEALING

16.    Plaintiff hereby refers to the preceding paragraphs and incorporates those paragraphs as though set forth in full in this cause of action.

17.    Defendant CCC breached its duty of good faith and fair dealing owed to Plaintiff in the following respects:

      (a)    Unreasonably failing to approve Plaintiff's claim;

      (b)    Unreasonably requiring Plaintiff to receive a "Primary Service" each week that she received home health care from a home health aide, pursuant to the Extended Home Health Care Rider to receive benefits, when CCC knew that Plaintiff's claim was payable pursuant to the APC rider to the Policy;

      (c)    Unreasonably failing to provide a prompt and reasonable explanation based on the terms of the Policy and in relation to the applicable facts and Policy provisions, for the denial of Plaintiff's claim for long term care benefits;

      (d)    Unreasonably failing to properly investigate Plaintiff's claim;

      (e)    Intentionally and unreasonably applying policy provisions so as to limit Defendant CCC's financial exposure and contractual obligations and to maximize profits; and

      (f)    Unreasonably compelling Plaintiff to institute litigation to recover amounts due under the policy in an effort to further discourage Plaintiff from pursuing her full policy benefits.

18.    Plaintiff is informed and believes and thereon alleges that Defendant CCC has breached its duties of good faith and fair dealing owed to Plaintiff by other acts or omissions of which Plaintiff is presently unaware.  Plaintiff will amend this

4

1 Complaint at such time as Plaintiff discovers the other acts or omissions of said

2 Defendant constituting such breach.

3     19.   As a proximate result of the aforementioned wrongful conduct of

4 Defendant, Plaintiff has suffered, and will continue to suffer in the future, damages

5 under the Policy, plus interest, for a total amount to be shown at the time of trial.

6

7     20.   As a further proximate result of the aforementioned wrongful conduct of

8 Defendant, Plaintiff has suffered anxiety, worry, mental and emotional distress, all to

9 Plaintiff's general damage in a sum to be determined at the time of trial.

10     21.   As a further proximate result of the aforementioned wrongful conduct of

11 Defendant, Plaintiff was compelled to retain legal counsel to obtain benefits under the

12 Policy.  Therefore, Defendant is liable to Plaintiff for those attorneys' fees reasonably

13 necessary and incurred by Plaintiff to obtain Policy benefits, in a sum to be

14 determined at the time of trial.

15     22.   Defendant's conduct described herein was intended by the Defendant to

16 cause injury to the Plaintiff or was despicable conduct carried on by the Defendant

17 with a willful and conscious disregard of the rights of Plaintiff, subjected the Plaintiff

18 to cruel and unjust hardship in conscious disregard to her rights, and was an

19 intentional misrepresentation, deceit, or concealment of a material fact known to the

20 Defendant with the intention to deprive the Plaintiff of property, legal rights or to

21 otherwise cause injury, such as to constitute malice, oppression, or fraud under

22 California Civil Code Section 3294, thereby entitling Plaintiff to punitive damages in

23 an amount appropriate to punish or set an example of Defendant.

24     23.   Defendant's conduct in wrongfully terminating and denying long term

25 care benefits to Plaintiff was an unfair act and practice which caused Plaintiff to

26 suffer a loss of income, a substantial loss of property set aside for personal care and

27 maintenance, and assets essential to her health and welfare.  Plaintiff is a disabled

28 person and senior citizen within the meaning of California Civil Code § 3345, and as

a consequence of Defendant's wrongful actions herein, Plaintiff is entitled to a trebling of any damages imposed by the trier of fact pursuant to California Civil Code § 3294.

## THIRD CLAIM FOR RELIEF BY PLAINTIFF CLASS AGAINST DEFENDANT FOR INJUNCTIVE AND DECLARATORY RELIEF

24. Plaintiff Class hereby refers to the preceding paragraphs and incorporates those paragraphs as though set forth in full in this cause of action.

25. "Plaintiff Class" refers to the class of insureds who: (1) were issued long term care policies of insurance by Defendant that included an Alternate Plan of Care Rider and a home health care rider with a "Primary Service" requirement; (2) submitted claims for long term care benefits to Defendant; (3) had their claims denied or limited by Defendant on the basis that the insured did not receive a "Primary Service" each week pursuant to a home health care rider; and (4) Defendant did not consider their claims under the Alternate Plan of Care rider.

26. This claim for relief seeks injunctive relief pursuant to Federal Rule of Civil Procedure 65, and declaratory relief pursuant to 28 United States Code Section 2201.

27. Plaintiff Class is informed and believes that defendant CCC has a pattern and practice of denying or limiting claims for benefits that are payable pursuant to the APC rider.

28. A controversy now exists between Plaintiff Class and CCC as to whether CCC wrongfully denied or limited benefits payable pursuant to the APC rider.

29. Plaintiff Class is therefore entitled to, and hereby requests that, this Court grant Plaintiff Class the following relief:

6

(a)  An order requiring CCC to consider Plaintiff Class claims for benefits payable pursuant to the APC rider; and

(b)  A declaration that CCC's pattern and practice of denying or limiting claims in Plaintiff Class' respective policies of insurance without consideration of whether the claims were payable pursuant to the APC rider  provisions, violates the terms of the policies and California law.

## CLASS ACTION ALLEGATIONS

30.  This action is brought pursuant to Federal Rule of Civil Procedure 23(b)(2).

31.  By this action, Plaintiff seeks to represent a class of persons similarly situated who: (1) were issued long term care policies of insurance by Defendant that included an Alternate Plan of Care Rider and a home health care rider with a "Primary Service" requirement; (2) submitted claims for long term care benefits to Defendant; (3) had their claims denied or limited by Defendant on the basis that the insured did not receive a "Primary Service" each week pursuant to a home health care rider; and (4) Defendant did not consider their claims under the Alternate Plan of Care rider.

32.  Plaintiff does not know the precise number of persons in the above-described class.  However, Plaintiff is informed and believes, and based thereon alleges, that the number of persons in the class is so numerous that joinder is impractical.  Prosecution of separate actions would create the risk of inconsistent or varying adjudications with respect to the individual members of the class.

33.  Plaintiff has sufficient participation in the litigation to protect the class from abuse and her counsel has sufficient experience in class action matters.  Thus, Plaintiff will adequately represent the interests of the class in this litigation.

34.  CCC, the party opposing the class, has acted or intends to act in the future on grounds generally applicable to the class.  Questions of law or fact common

7

to the class predominate over any questions affecting only individual members, and class action is superior to other available methods for the fair and efficient adjudication of the controversy.

35. Plaintiff's claims are probably identical with, and certainly typical of, the claims of other class members. Plaintiff's contention that CCC incorrectly denied her claim for long term care benefits when benefits were payable pursuant to the APC rider, applies to each class member. The injunctive relief sought herein is necessary to avoid irreparable injury to the class, and without which the class will be without adequate legal remedy.

36. Plaintiff has no interests which are contrary to or in conflict with those of the remaining class members. The number and identity of the members of the class are readily determinable from the records of CCC. Class members may be notified of the pendency of this class action by mail. Their addresses are readily available through the records of CCC.

WHEREFORE, Plaintiff and the Plaintiff Class pray for judgment against Defendant as follows:

1. As to the First and Second Claims for Relief:

    (a) Damages for failure to waive Plaintiff's premiums as required under the Policy, in an amount to be determined at the time of trial;

    (b) Damages for failure to provide full benefits under the Policy, in an amount to be determined at the time of trial, but in excess of $50,000, plus prejudgment interest, in a sum to be determined at the time of trial;

    (c) General damages for mental and emotional distress and other incidental damages in the sum of $900,000.00;

1         (d)     Punitive and exemplary damages in an amount in excess of

2                $3,000,000.00; and

3         (e)     A trebling of any punitive damages award pursuant to California

4                Civil Code § 3345.

5    2.     As to the Third Claim for Relief:

6         (a)     An order requiring CCC to consider Plaintiff Class claims for

7                benefits payable pursuant to the APC rider; and

8         (b)     A declaration that CCC's pattern and practice of denying or

9                limiting claims in Plaintiff Class' respective policies of insurance

10              without consideration of whether the claims were payable pursuant

11              to the APC rider  provisions, violates the terms of the policies and

12              California law

13         (c)     Punitive and exemplary damages in an amount in excess of

14                $3,000,000.00;

15         (d)     A trebling of any punitive damages award pursuant to California

16                Civil Code § 3345.

17    3.     As to all Claims for Relief:

18         (a)     For attorneys' fees as permitted by law;

19         (b)     For costs of suit incurred herein; and

20         (c)     For such other and further relief as the Court deems just and

21                proper.

22

23    DATED: June 25, 2008              KANTOR & KANTOR, LLP

24

                                                                                               BY:

25                                  GLENN R. KANTOR

26                                  ATTORNEYS FOR PLAINTIFF

                                    FRANCES MICHAEL

27

28

**EXHIBIT A**

# Continental Casualty Company



CNA Plaza
Chicago, Illinois 60685

A Stock Company

We promise to pay benefits as provided in this policy. We have issued this policy to You in consideration of the payment of the First Premium and the statements made in Your application.

Payment of the First Premium keeps Your policy in force for the Policy Term. You may renew this policy for further periods by payment of the Renewal Premium, subject to Our right to change premium as described below. The First Premium, the Renewal Premium and the Policy Term are shown in the Schedule.

### GUARANTEED RENEWABLE FOR LIFE
### PREMIUMS SUBJECT TO CHANGE

We guarantee to renew Your policy as long as the premium is paid within the allowable time. We can make no change to Your policy without Your consent.

We can change the premium rate for the policy, but only if We give You 31 days prior written notice and We change the premium rate for everyone who has this policy form in Your policy rating group in Your state.

### YOUR THIRTY DAY RIGHT TO EXAMINE YOUR POLICY

If You are not satisfied with Your policy, You may return it to Us or Our agent within 30 days after You receive it. We will then refund any premium You have paid. The policy will be considered to have never been issued.

SIGNED FOR THE CONTINENTAL CASUALTY COMPANY

Corporate Secretary

Chairman of the Board

COUNTERSIGNED _____
LICENSED RESIDENT AGENT (WHERE REQUIRED BY LAW)

P1-59433-A                    LONG TERM CARE POLICY

Complaint - Exhibit A

1

DUPLICATE

## GUIDE TO YOUR POLICY

|  |  | Page |
|---|---|---|
| Renewal Provision | | 1 |
| 30 Day Right To Examine Your Policy | | 1 |
| Policy Schedule | | 3 |
| Part 1: | Definitions | 4 |
| Part 2: | Benefits | |
| | General Benefit Information | 6 |
| | Long Term Care Benefit | 6 |
| | Waiver of Premium Benefit | 6 |
| Part 3: | Exclusions and Limitations | |
| | Exclusions | 7 |
| | Pre-existing Condition Limitation | 7 |
| Part 4: | Claims | 7 |
| Part 5: | Premium and Reinstatement | 8 |
| Part 6: | The Contract | 8 |

A copy of Your application and any added provisions are attached at the back of the policy.

Complaint - Exhibit A

## POLICY SCHEDULE
(amended)

## BENEFITS

ELIMINATION PERIOD................................................................ ............ 15 Days

LONG TERM CARE BENEFIT.................................................... ............ $100.00 per Day

BENEFIT PERIOD .................................................................................. Lifetime

LIFETIME MAXIMUM BENEFIT.............................................................. Unlimited

## ADDITIONAL BENEFITS

WAIVER OF PREMIUM ........................................................................... Mandatory

PRIOR HOSPITALIZATION ..................................................................... No Prior (59436)

AUTOMATIC INCREASE BENEFIT.......................................................... None

HOME HEALTH CARE RIDER .................................................................. Selected (44295)

EFFECTIVE DATE OF ORIGINAL COVERAGE:............................................ May 17, 1991

POLICY TERM: ....................................................................................... Quarterly

ANNUAL PREMIUM: ................................................................................ $2,674.81

RENEWAL PREMIUM: .............................................................................. $722.20

INSURED: ............................................................................................... Frances L Michael

POLICY NUMBER:.................................................................................... 076381081

EFFECTIVE DATE OF CHANGE IN COVERAGE (IF ANY)............................ N/A

Complaint - Exhibit A

PART 1: DEFINITIONS

Whenever used in this Policy·

"You" and "Your" means the Insured named in the Schedule

"We" "Our" and "Us" means the Continental Casualty Company, CNA Plaza, Chicago, Illinois 60685

"Effective Date" means the effective date of coverage under Your policy.

"Injury" or "Sickness" means injury or sickness that results in loss that begins while Your policy is in force; however, loss resulting from a Pre-existing Condition is subject to the Pre-existing Condition Limitation in Part 3.

"Pre-existing Condition" means any condition for which You received medical advice or treatment within the 6 months before Your policy Effective Date.

"Hospital" means a place which is licensed by the state as a Hospital and is operating within the scope of its license.

"Skilled Nursing Facility" means a place which:

1. is licensed by the State;
2. provides skilled nursing care under the supervision of a physician;
3. has 24-hour-a-day nursing services by or under the supervision of a registered nurse (RN) and
4. keeps a daily medical record of each patient.

It does not include a facility or any of its sections which is primarily a place for persons suffering from mental disease.

"Intermediate Care Facility" means a place which:

1. is licensed by the State;
2. provides nursing care to persons who do not require the degree of care which a Hospital or Skilled Nursing Facility provides, but require care above the level of room and board under the supervision of a physician;
3. provides nursing care by or under the direction of a registered nurse (RN) or a licensed practical or vocational nurse (LPN or LVN); and
4. keeps a daily medical record of each patient.

It does not include a facility or any of its sections which is primarily a place for persons suffering from mental disease.

"Long Term Care Facility" means a Skilled Nursing Facility or an Intermediate Care Facility

"Skilled Care" means care for injury or sickness which: 1) requires the training and skills of a licensed professional nurse; 2) is prescribed by a physician; 3) is medically necessary for the condition or illness of the patient; and, 4) is available on a twenty-four-hour basis.

"Intermediate Care" means technical nursing care which requires selected nursing procedures for which the degree of care and evaluation is less than that provided for Skilled Care, but greater than that provided for Custodial/Personal Care.

P1-59433-A

Complaint - Exhibit A
-4-

"Custodial Care" or "Personal Care" means care which is mainly for the purpose of meeting daily living requirements. This level of care may be provided by persons without professional skills or training. Examples are: Help in walking, getting out bed, bathing, dressing, eating meals, and taking medications.

"Medically Necessary" means care or services which are: 1) recommended by a physician, other than the owner or an employee of a Long Term Care Facility; 2) in keeping with accepted medical standards for Your Injury or Sickness; and 3) not primarily for the convenience of the insured or the insured's family.

"Long Term Care" means Skilled Care, Intermediate Care, or Custodial Care or Personnal Care, which are Medically Necessary.

"One Period of Confinement" means consecutive days of Long Term Care received as an inpatient in a Long Term Care Facility or successive confinements due to the same or related causes when discharge from and readmission to the Long Term Care Facility occurs within a period of 180 days. If Long Term Care confinements are separated by 180 days or more, a new period of confinement begins subject to a new hospitalization requirement and Elimination Period, if any.

"Elimination Period" means the number of days at the beginning of a Long Term Care Facility confinement for which no benefits are payable.

"Benefit Period" means the period of time for which You are eligible to receive benefits under the policy. A benefit period begins on the first day that You are eligible for and begin to receive benefits. The benefit period ends when You are no longer eligible to receive benefits or have received the Lifetime Maximum Benefit.

"Lifetime Maximum Benefit" means the means the total period for which benefits are payable for Long Term Care Facility confinements, regardless of whether they are incurred during more than one Period of Confinement.

## PART 2:  BENEFITS

### GENERAL BENEFIT INFORMATION

The Elimination Period, the Long Term Care Benefit, and the Benefit Period are shown in the Schedule.

2. All benefits payable are subject to the Lifetime Maximum Benefit shown in the Schedule.

3. In order to be payable, all Long Term Care Facility confinements must begin while Your policy is in force and must result from Injury or Sickness. Termination of Your policy will not affect any claim for Long Term Care that begins before termination.

### LONG TERM CARE BENEFIT

We will pay You the Long Term Care Benefit for each day You require Long Term Care in a Long Term Care Facility. Benefits begin after the Elimination Period and are payable for the length of the Benefit Period for any One Period of Confinement. In order for benefits to be payable, Your Injury or Sickness must require and continue to require Long Term Care.

### WAIVER OF PREMIUM BENEFIT

After a covered Long Term Care Facility confinement of 90 consecutive days, We will waive the payment of any premium becoming due during any further continuous period of confinement in a Long Term Care Facility. A covered Long Term Care Facility confinement includes the days which are used to satisfy the Elimination Period. Premiums that become due will be waived until Your discharge from the Long Term Care Facility or until benefits are no longer payable, whichever occurs first; thereafter, You must make premium payments when due.

T1-59436-A

Complaint - Exhibit A

6

## PART 3: EXCLUSIONS AND LIMITATIONS
### EXCLUSIONS

This policy does not cover any Long Term Care Facility confinement which is:

1. due to Injury or Sickness for which benefits are payable under Workers' Compensation or Occupational Disease Act or Law;
2. due to mental, psychoneurotic, or personality disorders without demonstrable organic disease; or
3. the result of war or any act of war.

### PRE-EXISTING CONDITIONS LIMITATION

Long Term Care Facility confinements due to Pre-existing Conditions shown on the application are covered immediately.

We will not pay benefits for a Long Term Care Facility confinement due to a Pre-existing Condition which is not disclosed in the application unless confinement begins 6 months or more after the Effective Date.

## PART 4: CLAIMS
### WRITTEN NOTICE OF CLAIM

Written notice of claim must be given to Us within 30 days after a covered loss begins, or as soon as reasonably possible.

The notice will be sufficient if it identifies You and is sent to Us at Our Home Office, CNA Plaza, Chicago, Illinois 60685 or is given to Our Agent.

### CLAIM FORMS

After We receive written notice of claim, We will furnish claim forms within 15 days. If We do not, You will have met the requirements for written proof of loss if You send Us a written statement of the extent and nature of the loss.

### WRITTEN PROOF OF LOSS

Written proof of loss must be sent to Us within 90 days after the end of a period for which You are claiming benefits. If that is not reasonably possible, Your claim will not be affected. But, unless You are legally incapacitated written proof must be given within one year.

### TIME OF PAYMENT OF CLAIMS

We will pay any benefit due You immediately after We receive due written proof of loss.

### PAYMENT OF CLAIMS

All benefits are paid to You, or Your estate unless You have assigned them elsewhere.

If benefits are payable to Your estate, We may pay up to $1,000 to any relative of Yours whom We feel is entitled to the benefits. Any payment made in good faith will discharge Us to the extent of the payment.

### PHYSICAL EXAMINATION

At Our expense, We will have the right to have a physician examine You as often as reasonably necessary while Your claim is pending.

### MISSTATEMENT OF AGE

If Your age has been misstated, policy benefits will be those that the premium would have purchased at Your correct age. If coverage would not have been issued, We will refund the premium paid.

Complaint - Exhibit A

## LEGAL ACTIONS

You cannot bring legal action within 60 days from the date written proof of loss is given. You cannot bring it after three years from the date written proof of loss is required to be given.

## PART 5: PREMIUM AND REINSTATEMENT

### PAYMENT OF PREMIUM

Premiums, payable in United States currency, are due at the start of each Policy Term. Payment may be made to Us at Our Home Office at CNA Plaza, Chicago, Illinois 60685, or to Our agent. Change in Policy Term will be allowed on written request.

### GRACE PERIOD

A grace period of 31 days will be allowed for late payment of each premium due after the first premium. During this time the policy will remain in force.

If the premium is not paid when due or within the grace period, the policy will terminate.

### REFUND OF UNEARNED PREMIUM AT DEATH

Upon notice of Your death, We will make a pro-rata refund of any premium paid for a period beyond the date of Your death.

### REINSTATEMENT

If Your Policy lapses because the premium was not paid when due or within the grace period, a subsequent acceptance of premium by Us or by Our agent without requiring an application for reinstatement will reinstate Your policy.

If We require an application for reinstatement, and We accept Your premium, You will be issued a conditional receipt for premium. If We approve Your application for reinstatement, the policy will be reinstated as of the date of Our approval. If We disapprove Your application, We must do so in writing within 45 days of the conditional receipt or the policy will be reinstated on the 45th day after the date of the conditional receipt.

The reinstated policy will cover only loss due to: 1) Injury that occurs after the date of reinstatement; or 2) Sickness that begins more than 10 days after the date of reinstatement. Except for this and any new provisions added as a result of the reinstatement, both Your rights and Ours will be the same as before the policy lapsed. If We accept premium for a reinstated policy, We can apply it back up to 60 days before the date of reinstatement.

## PART 6: THE CONTRACT

### ENTIRE CONTRACT AND CHANGES TO IT

This policy is legal contract between You and Us. The policy, the application and any attached papers make up the entire contract. No one has the right to change any part of this policy or to waive any of its provisions unless the change is approved in writing on the policy by one of Our officers.

### TIME LIMIT ON CERTAIN DEFENSES

After Your policy has been in force for 2 years, no misstatements, except fraudulent misstatements, made by You in the application shall be used to void the policy or to deny a claim for loss incurred after the 2 year period.

No claim for loss incurred after 6 months from the Effective Date shown on th Schedule will be reduced or denied because a disease or physical condition existed prior to the Effective Date, unless it is excluded from the policy by name or specific description.

### CONFORMITY WITH STATE STATUTES

If any provision of this policy is in conflict with the statutes of the state in which You reside on the policy Effective Date, the provision is automatically amended to meet the minimum requirements of the statue.

P1-59433-A                      Complaint - Exhibit A

8

## Continental Casualty Company



**For All the Commitments You Make**

CNA Plaza
Chicago, Illinois 60685                A Stock Company

### EXTENDED HOME HEALTH CARE RIDER

In consideration of the payment of an additional premium of <u>the amount which is included in the premium shown on the policy schedule</u>, it is agreed that the following is added to the policy to which this rider is attached.

#### GENERAL BENEFIT INFORMATION

1.  We will pay for a maximum of seven total visits per Week. This total may include Home Health Care Visits and Adult Day Care Visits.
2.  In order to be payable, all Home Health Care Services and Adult Day Care must begin while Your policy is in force and be required as a result of Injury or Sickness. Termination of Your policy will not affect any claim for Home Health Care Services or Adult Day Care for a Plan of Treatment that begins before termination up to the end of the Benefit Period for that claim.
3.  If Home Health Care Services and/or Adult Day Care are received as a result of more than one Injury or Sickness at the same time, and there is more than one Plan of Treatment established, We will pay benefits as if there was only one Plan of Treatment for all conditions being treated.
4.  Benefits for Home Health Care Services and Adult Day Care begin after the Elimination Period for this rider and are payable for the length of the Benefit Period for this rider. However, in order for benefits to be payable for Secondary Services or Adult Day Care such services must be received in a Week in which at least one Primary Service was received. Benefits need not be payable under this rider for such Primary Service.

#### HOME HEALTH CARE BENEFIT

If You receive Home Health Care Services in a Home Convalescent Unit, as part of a Plan of Treatment, We will pay You a benefit equal to the amount of expenses incurred, but not to exceed 50% of the Long Term Care Benefit shown in Your policy schedule for each visit.

We will not pay benefits for supplies provided by a Home Health Care Agency.

To the extent that benefits are available to You under Medicare, We will not duplicate coverage under this policy.

#### ADULT DAY CARE BENEFIT

If during a Plan of Treatment You receive Adult Day Care, We will pay a benefit equal to the actual charge made by the Adult Day Care Center up to 50% of the Long Term Care Benefit shown in Your policy schedule for each day you receive Adult Day Care. We will not pay benefits for supplies provided by an Adult Day Care Center.

#### DEFINITIONS

"Home Health Care Services" means Medically Necessary Primary Services and Secondary Services provided by a Home Health Care Agency. Home Health Care Services also include homemaker services provided during, but not necessarily described in, a Plan of Treatment.

Home Health Care Services do not include services provided by members of Your immediate family, which means Your spouse, children, brothers or sisters or persons related to You by marriage.

"Home Health Care Agency" means an entity which provides Home Health Care Services and:

1.  has an agreement as a provider of Home Health Care Services under the Medicare program; or
2.  is licensed by state law as a Home Health Care Agency; or
3.  is accredited as a Home Health Care Agency or as a provider of Home Health Care Services by the National League of Nursing, American Public Health Association or Joint Commission on Accreditation of Hospitals.

A Home Health Care Agency will also mean a registered nurse, a licensed practical nurse or a licensed vocational nurse operating within the scope of his or her license.

Complaint - Exhibit A

R1-44295-A

Inv. No. B1-44295-A

9

"Plan of Treatment" means a program of care and treatment by a Home Health Care Agency established and approved in writing by Your physician before the start of Home Health Care Services and confirmed at least once every 60 days.

"Primary Services" are nursing care services provided by a registered nurse (RN), a licensed practical or vocational nurse (LPN or LVN); physical therapy; and speech therapy.

"Secondary Services" are services provided by a medical social worker; occupational therapy; home health aide services; and homemaker services.

"Home Health Care Visit" means each visit to a Home Convalescent Unit by a person performing Primary Services or Secondary Services provided through or coordinated by a Home Health Care Agency.

"Home Convalescent Unit" means Your home, a private home; a home for the retired or aged; or a place which provides residential care. It does not include a hospital or a nursing facility.

"Adult Day Care" means a community-based group program designed to meet the needs of functionally impaired adults through an individual plan of care. It is a program that provides health, social and related support services in a protective setting during any part of the day, but less than 24-hour care.

"Adult Day Care Center" means a facility which is licensed or certified by the state as an adult day care center.

"Adult Day Care Visit" means a visit to an Adult Day Care Center.

"Week" means a period of time which begins at 12:01 a.m. Monday and ends at 12 midnight Sunday.

"Elimination Period" for this rider means the number of Home Health Care Visits and Adult Day Care Visits at the beginning of a Benefit Period for which no benefits are payable.

The Elimination Period will be 1) five Home Health Care Visits or Adult Day Care Visits or 2) no visits if Home Health Care or Adult Day Care follows within 30 days of a Long Term Care Facility confinement of at least 15 days or a Hospital confinement of at least 3 days.

"Period of Care" means days of Hospital confinement, Long Term Care facility confinement or Skilled, Intermediate, Intermediate or Personal Care or Custodial Care in any setting due to the same or related causes not separated by 180 calendar days. Successive periods of care separated by at least 180 days will be considered a new period of care.

"Benefit Period" means the period of time for which You are eligible to receive benefits under this rider for any one Period of Care. A Benefit Period begins on the first day You are eligible to receive a benefit under the rider and ends at the earlier of the end of a Plan of Treatment or the end of 104 weeks. If You are confined in a Hospital or Long Term Care Facility during a Period of Care, such days of confinement will not be counted against the 104 week limit.

This rider takes effect and ends at the same time as the policy to which it is attached. It is subject to all the exceptions, limitations and provisions of the policy not inconsistent with the rider.

Corporate Secretary

Chairman of the Board

## Continental Casualty Company



For All the Commitments You Make'

CNA Plaza
Chicago, Illinois 60685

A Stock Company

### ALTERNATE PLAN OF CARE

It is hereby agreed that the following is added to the policy to which this rider is attached.

If You would otherwise require confinement in a Long Term Care Facility, we may pay for the cost of services under a written alternate plan of care, if appropriate alternative care is a medically acceptable option.

The alternate plan may be initiated by You or Us. It will be developed by health care professionals and consistent with generally accepted medical practice. Those parts which are mutually agreeable to You, Your physician and Us will be adopted.

The alternate plan of care may detail: (1) special treatments; (2) different sites of care; or (3) different levels of care. Suggested services and benefit levels may be different from, or not otherwise covered by, the policy. If so, they will be paid at the levels specified in the alternate plan of care.

The total of all benefits paid under the policy and this rider will not exceed the Maximum Benefit, if any, payable for a Long Term Care Facility confinement due to the same or related causes within a Period of Care.

### DEFINITIONS

Maximum Benefit means the Long Term Care Benefit shown in the schedule times the Benefit Period shown in the schedule.

Period of Care means days of Hospital confinement, Long Term Care Facility confinement, or Skilled, Intermediate or Personal Care or Custodial Care in any setting due to the same or related causes not separated by 180 calendar days.

This rider takes effect and ends at the same time as the policy to which it is attached. It is subject to all the exceptions, limitations and provisions of the policy not inconsistent with the rider.

Corporate Secretary

Chairman of the Board

## Complaint - Exhibit A

# Continental Casualty Company


For All the Commitments You Make'

CNA Plaza
Chicago, Illinois 60685

A Stock Company

## POLICY AMENDMENT RIDER

It is agreed that the following is added to the policy to which this rider is attached.

The Lifetime Maximum Benefit limitation in the policy is deleted.

The words "One Period of Confinement" wherever it appears in the policy is replaced by the words "Period of Care." "Period of Care" means days of Hospital confinement, Long Term Care Facility confinement or Skilled, Intermediate or Personal Care or Custodial Care in any setting due to the same or related causes not separated by 180 Calendar days. Benefits need not be payable by the policy during the entire Period of Care.

If separated by 180 days or more, a new Period of Care begins subject to a new hospitalization requirement, if any, maximum benefit, if any, and Elimination Period, if any.

This rider takes effect and ends at the same time as the policy to which it is attached. It is subject to all the exceptions, limitations and provisions of the policy not inconsistent with the rider.

Corporate Secretary

Chairman of the Board

R1-44296-A

**Complaint - Exhibit A**

12

B1-44296-A

The employees of CNA thank you for the confidence you have placed in us by choosing our company for your insurance needs.

Sincerely,

*Carole Pierce*

Carole Pierce
Vice President

JS 44 - CAND (Rev. 11/04)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO.)

**I.(a) PLAINTIFFS**

FRACES L. MICHAEL

**DEFENDANTS**

CONTINENTAL CASUALTY COMPANY

E-filing

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

SAN MATEO

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

ILLINOIS

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Kantor & Kantor LLP
19839 Nordhoff Street, Northridge, CA 91324

ATTORNEYS (IF KNOWN)

**II. BASIS OF JURISDICTION** (PLACE AN 'X' IN ONE BOX ONLY)

☐1 U.S. Government
    Plaintiff

☐2 U.S. Government
    Defendant

☐3 Federal Question
    (U.S. Government Not a Party)

☒4 Diversity
    (Indicate Citizenship of Parties in
    Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN 'X' IN ONE BOX FOR PLAINTIFF
AND ONE BOX FOR DEFENDANT)
(For diversity cases only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒1 | ☐1 | Incorporated or Principal Place of Business In This State | ☐4 | ☒4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business In Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☒1 Original
    Proceeding

☐2 Removed from
    State Court

☐3 Remanded from
    Appellate Court

☐4 Reinstated or
    Reopened

☐5 Transfered from
    Another district
    (specify)

☐6 Multidistrict
    Litigation

☐7 Appeal to District
    Judge from Magistrate
    Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐610 Agriculture | ☐422 Appeal 28 USC 158 | ☐400 State Reapportionment |
| ☐120 Marine | ☐310 Airplane | ☐362 Personal Injury | ☐620 Other Food & Drug | ☐423 Withdrawal 28 USC 157 | ☐410 Antitrust |
| ☐130 Miller Act | ☐315 Airplane Product | Med Malpractice | ☐625 Drug Related Seizure of | | ☐430 Banks and Banking |
| ☐140 Negotiable Instrument | Liability | ☐365 Personal Injury | Property 21 USC 881 | | ☐450 Commerce/ICC Rates/etc. |
| ☐150 Recovery of Overpayment | ☐320 Assault Libel & | Product Liability | ☐630 Liquor Laws | **PROPERTY RIGHTS** | ☐460 Deportation |
| & Enforcement of | Slander | ☐368 Asbestos Personal | ☐640 RR & Truck | ☐820 Copyrights | ☐470 Racketeer Influenced and |
| Judgment | ☐330 Federal Employers | Injury Product Liability | ☐650 Airline Regs | ☐830 Patent | Corrupt Organizations |
| ☐151 Medicare Act | Liability | | ☐660 Occupational | ☐840 Trademark | ☐480 Consumer Credit |
| ☐152 Recovery of Defaulted | ☐340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐490 Cable/Satellite TV |
| Student Loans (Excl | ☐345 Marine Product | ☐370 Other Fraud | ☐690 Other | | ☐810 Selective Service |
| Veterans) | Liability | ☐371 Truth In Lending | **LABOR** | **SOCIAL SECURITY** | ☐850 Securities/Commodities/ |
| ☐153 Recovery of Overpayment | ☐350 Motor Vehicle | ☐380 Other Personal | ☐710 Fair Labor Standards Act | ☐861 HIA (1395ff) | Exchange |
| of Veteran's Benefits | ☐355 Motor Vehicle | Property Damage | ☐720 Labor/Mgmt Relations | ☐862 Black Lung (923) | ☐875 Customer Challenge |
| ☐160 Stockholders Suits | Product Liability | ☐385 Property Damage | ☐730 Labor/Mgmt Reporting & | ☐863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐190 Other Contract | ☐360 Other Personal Injury | Product Liability | Disclosure Act | ☐864 SSID Title XVI | ☐891 Agricultural Acts |
| ☐195 Contract Product Liability | | | ☐740 Railway Labor Act | ☐865 RSI (405(g)) | ☐892 Economic Stabilization |
| ☐196 Franchise | | | ☐790 Other Labor Litigation | | Act |
| | | | ☐791 Empl.Ret. Inc. Security | **FEDERAL TAX SUITS** | ☐893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | Act | ☐870 Taxes (US Plaintiff or | ☐894 Energy Allocation Act |
| ☐210 Land Condemnation | ☐441 Voting | ☐510 Motion to Vacate | | Defendant | ☐895 Freedom of Information |
| ☐220 Foreclosure | ☐442 Employment | Sentence Habeas Corpus: | | ☐871 IRS - Third Party | Act |
| ☐230 Rent Lease & Ejectment | ☐443 Housing | ☐530 General | | 26 USC 7609 | ☐900 Appeal of Fee |
| ☐240 Torts to Land | ☐444 Welfare | ☐535 Death Penalty | | | Determination Under |
| ☐245 Tort Product Liability | ☐440 Other Civil Rights | ☐540 Mandamus & Other | | | Equal Access to Justice |
| ☐290 All Other Real Property | ☐445 Amer w/ disab - Empl | ☐550 Civil Rights | | | ☐950 Constitutionality of State |
| | ☐446 Amer w/ disab - Other | ☐555 Prison Condition | | | Statutes |
| | | | | | ☐890 Other Statutory Actions |

**VI. CAUSE OF ACTION** (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

28 U.S.C. § 1332 failure to pay policy benefits

**VII. REQUESTED IN COMPLAINT:**  CHECK IF THIS IS A CLASS ACTION ☒    DEMAND $_____    CHECK YES only if demanded in complaint:
UNDER F.R.C.P. 23    JURY DEMAND: ☐ YES  ☒ NO

**VIII. RELATED CASE(S)**
**IF ANY**

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE
"NOTICE OF RELATED CASE".

**IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)**
**(PLACE AND "X" IN ONE BOX ONLY)**    ☒ SAN FRANCISCO/OAKLAND    ☐ SAN JOSE

DATE

JUNE 25, 2007

SIGNATURE OF ATTORNEY OF RECORD

GLENN R. KANTOR, ATTORNEY FOR PLAINTIFF

ORIGINAL

AO 440 (Rev. 03/08) Civil Summons

# UNITED STATES DISTRICT COURT E-filing
### for the
### Northern District of California

| | | |
|---|---|---|
| FRANCES L. MICHAEL | ) | CV 08    3101 |
| Plaintiff | ) | |
| v. | ) | Civil Action No.    EMC |
| CONTINENTAL CASUALTY COMPANY | ) | |
| Defendant | ) | |

## Summons in a Civil Action

To:    CONTINENTAL CASUALTY COMPANY
_____
        *(Defendant's name)*

A lawsuit has been filed against you.

Within  20  days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, whose name and address are:

If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Richard W. Wieking
Name of clerk of court

Date:    JUN 2 6 2008

Helen L. Almacen
Deputy clerk's signature

*(Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States allowed 60 days by Rule 12(a)(3).)*